FIDELIO FENNER *v.* ZACHARIAH R. TUCKER.

An auction sale of land under a power contained in a mortgage may be avoided, where, by a mistake in the advertisement, the sale is advertised to be made in one year, and was designed to be made and was actually made in the succeeding year; or where the tract of land as advertised, although by its description it includes the lot sold, contains double the area of the latter.

A purchaser at such a sale, who when bid against expostulates with a rival bidder, informing him of his losses, and telling him that on account of them he ought not to bid against him, thereby causing the bidder to withdraw, and obtaining the land at a considerable undervalue, will not be allowed to retain the benefit of his purchase against a subsequent mortgagee of the land who seeks to redeem the mortgage under which the sale is made.

BILL IN EQUITY, filed by the mortgagee of a tract of land in Cranston, near what is now called Elmwood, to set aside a sale under a power contained in a prior mortgage of the same tract, and to redeem that and another prior mortgage.

On the 20th day of June, 1853, one Samuel Slocum, being then owner of the tract, mortgaged the same to one Henry J. Holden in fee, to secure the sum of twenty-eight hundred dollars, and afterwards, on the second day of November, 1855, executed another mortgage of the same tract, in fee, to one James T. Slocum, to secure the sum of one thousand dollars, which last-named mortgage contained a power of sale, authorizing the mortgagee, his personal representatives or assigns, in case of default in payment for the term of ten days of the mortgage debt, or of the semiannual interest due thereon, to sell the premises or any part thereof at public auction, first giving, after the expiration of said term of ten days, twenty days' notice of such sale in some one of the public newspapers printed in the city of Providence. Subject to the above mortgages, the equity of redemption in said tract, by mesne conveyances from Samuel Slocum, became vested in one Arthur M. Potter; who, on the 25th day of February, 1858, conveyed a portion of said tract in fee, with warranty, to one Joseph Adams, and afterwards, on the 26th day of February, conveyed the remaining portion of the same to Nancy Greene, wife of William H. Greene, taking back from Greene and wife a mortgage to secure a portion of

the purchase-money. The larger portion of the purchase-money agreed to be paid by Greene and wife was by them to be applied to the payment of the two Slocum mortgages, in relief of the portion of the tract sold by Potter to Adams with full warranty.

The plaintiff's title to redeem rested upon two mortgages, both executed to him by Joseph Adams on the 25th day of February, one to secure the sum of twenty-one hundred and fifty-six dollars and nineteen cents, and the other to secure to him the sum of one thousand dollars, advanced by him to said Adams.

The respondent first became interested in the tract by receiving from Arthur M. Potter, who was indebted to him, on the 19th day of April, 1858, an assignment of the mortgage which he had taken from Greene and wife. The respondent subsequently, on the 28th day of February, 1859, purchased and took an assignment of the mortgage executed by Samuel Slocum to Henry J. Holden, being the first mortgage on the tract. Before this, however, to wit, on the 15th day of February, 1859, he had become purchaser of the tract at public auction, under the power contained in the second mortgage on the tract, to wit, the mortgage from Samuel to James T. Slocum, and had also, for greater caution, taken an assignment of the last-named mortgage.

It appeared in proof, that by some mistake, the sale under the power, by which the respondent claimed to foreclose the plaintiff's right to redeem, was advertised to take place on the 12th day of February, 1858, but actually was made on the 12th day of February, 1859; the plaintiff not having seen or received any notice whatever of the sale until some time after it took place. It further appeared, that the advertisement was of the whole tract, as originally mortgaged, whereas a portion of the tract had, by consent, been sold, and released from the mortgage.

Evidence was also submitted, on the part of the plaintiff, tending to prove, that the mortgage sale was procured and conducted by the respondent, with a view to his becoming a purchaser at an undervalue; and especially, that at the sale, finding that Ephraim Jackson, a substantial purchaser, was

bidding against him, he crossed over the platform to said Jackson, and asked him why he bid against him? and in reply to Jackson's excuse, that he supposed it to be a free sale, as advertised, said, that he thought that Jackson ought not to bid against him, as he had lost so much money by the Potters, and expressed some feeling about it; whereupon, Jackson withdrew from bidding, and the estate was knocked down to Tucker, at a considerable' undervalue. Upon the point of the respondent's agency in the sale, and of his conduct before and at the sale, with the view of buying it in at a bargain, evidence was submitted on both sides, the result of which sufficiently appears in the opinion of the court.

- *James Tillinghast*, for the plaintiff.

1. The sale under the power was void, inasmuch as it took place a year after the time it was advertised for sale. The advertisement was calculated to mislead the public and those interested into the belief that it was an old advertisement, continued or reinserted by mistake.

2. The advertisement of more land to be sold, than remained for sale, was also calculated to mislead the public, and avoided the sale. *Burnet* v. *Denniston*, 5 Johns. Ch. 35.

3. The sale is void also on account of the direct interference of the respondent, by which the biddings were stifled, and fair competition prevented. *Fuller* v. *Abrahams*, 6 Moore, 316 ; S. C. 3 Brod. & Bing. 116 ; *Hamilton* v. *Hamilton*, 2 Rich. Eq. 355 ; *Wooten* v. *Hinkle*, 20 Missou. 290 ; *Longwith* v. *Butler*, 3 Gilman, 32 ; *Gardiner* v. *Morse*, 25 Maine, 140 ; *Martin* v. *Ranlett*, 5 Rich. Law, 54 ; *Haynes* v. *Crutchfield*, 7 Ala. 189 ; *Matthie* v. *Edwards*, 2 Collyer, 465 ; S. C. 33 Eng. Ch. Rep. 465 ; 1 Hill on Mortgages, 91 ; 2 Kent's Com. 539.

4. By his purchase of Greene's mortgage to Potter, the respondent had notice of the agreement by which, as between Potter, Greene, and Adams, the Slocum mortgages were to be wholly imposed upon Greene's portion of the tract, and is estopped in equity from now claiming in contravention of that agreement.

*Lapham*, for the respondent.

1. The right of the complainant to redeem the Slocum

mortgages is cut off by the sale, under the power contained in the younger of those mortgages; this mortgage being prior in date to the title of the complainant.

2. The advertisement included the land to be sold, and that is enough.

3. The mistake of the year in the advertisement cannot affect the sale; since it was so palpable as to mislead no one.

4. Many bidders were present, with whose action the respondent did not interfere; and as to Jackson, the respondent said no more than he had a right to say.

BOSWORTH, J. Upon the statements of the bill admitted in the answer, it is clear, that prior to the sale of this land under the power contained in the mortgage of James T. Slocum, the complainant had a right to redeem by paying the amount due on the two mortgages prior in date to his. As between him and the respondent, he might do this and hold the land until the respondent should pay his reasonable contribution. Where there are two distinct parcels of a tract of land, of which two persons are severally seised, the whole tract being under mortgage to a third party, the one entitled to either tract has a right to redeem the mortgage, and to take an assignment and hold the land until the other pays his share. The land is charged with a burden, of which each part ought to bear no more than its due proportion. 1 Powell on Mortgages, 261–316, and cases cited.

If the sale under the mortgage of Slocum is a valid sale, and the respondent a *bonâ fide* purchaser at that sale, the complainant is cut off from his right to redeem, because the title sold was prior to his. Sales under mortgages with power to sell, are regarded by courts with a jealous care. They furnish a very summary mode of obtaining payment of a mortgage debt and of foreclosing an equity of redemption, and should therefore be conducted with perfect fairness, in order that the mortgagor's rights, or those of his assignees who may have purchased his equity for valuable consideration, may not be sacrificed. If, therefore, the power of sale conferred by the mortgage is not strictly and fairly pursued; if the execution of the power is tainted with fraud; or if any mistake is

made in conducting the sale adapted to mislead those who might desire to purchase, so that the sale, if at auction, occurs under circumstances calculated to depreciate the value of the property sold, or prevent it from bringing a fair auction price, the sale will be held invalid.

The sale authorized in the power annexed to this mortgage, was to be made after advertising the premises for the space of thirty days, prior to the sale. A sale without this notice would certainly be void. It was incumbent therefore on the mortgagee to give this notice. In giving it, he must advertise the premises to be sold, and give the public notice of the time and place of sale. If the premises are not truly described, it cannot be truly said that the premises are advertised; if the time and place of sale are not made reasonably certain, it cannot be said that public notice of the sale is given. In both respects adverted to, the notice given of this sale is defective and insufficient. The tract advertised was a tract of land containing four acres more than the tract embraced in the mortgage. Although the tract sold was contained in the tract advertised, yet the tract advertised was not the tract to be sold. Persons who might desire to purchase the quantity of land embraced in the mortgage might not want to buy the tract advertised to be sold; and therefore might not attend the sale. The notice given bore date January 21st, 1858, and the sale was appointed to take place on February 12th. Now, although this notice was published in a paper issued in January, 1859, it was not proper notice of a sale to take place in February, 1859. At least, it might mislead the public as to the time of sale. Being dated January, 1858, it would naturally point to the succeeding month of February; and those who read it would naturally suppose it an advertisement of a sale of the past year, continued inadvertently, or published by mistake.

But there is another ground on which the sale was clearly invalid, arising out of the conduct of the purchaser at the sale. By the testimony of Ephraim Jackson, whose deposition is in the case, it appears that after the bidding had commenced, Tucker, the respondent, having made the first bid, and the witness raising his bid, and when several rival bids had been

made by them respectively, crossed over the platform, and asked the witness why he bid against him. The witness replied, that he thought it was a free sale. The respondent said, the witness ought not to bid against him as he had lost largely by the Potters, and expressed some feeling about it, whereupon the witness withdrew and the estate was struck off to Tucker. The estate, upon the evidence, sold for much less than its value. This witness states in his testimony that he had intended to give a very much larger amount for it than the sum for which it was sold.

In Sugden on Vendors and Purchasers, p. 30, it is laid down " that if a purchaser by his conduct deter others from bidding, the sale will not be binding;" and the doctrine is illustrated by a case cited, which is very similar to this. Upon a sale by auction of a barge, a bidder addressed the company present, saying, that he had a large claim against the late owner, by whom he said he had been ill used, whereupon no one offered to bid against him ; but the auctioneer refusing to knock down the property to a single bidder, a friend of the bidder's bade a guinea more, and the first bidder then made a second and higher bid, amounting, however, to only one fourth of the prime cost of the barge ; it was held that there was no legal sale. In this case the interference was quite direct, and the bidder was deterred, and the estate was sold for much less than it would have sold for without the interference. See *Fuller* v. *Abrahams*, 3 Brod. & Bing. 116 ; S. C. 6 Moore, 316. See also *Troup* v. *Wood*, 4 Johns. Ch. Rep. 228, 254; *Doolin* v. *Ward*, 6 Johns. Rep. 194; *Wilbour* v. *Howe*, 8 Johns. 346 ; *Thompson* v. *Davis*, 13 Johns. 112.

For these causes we think that the sale under the power was void, and must be set aside ; and the plaintiff must be allowed to redeem the mortgages on the estate held by the respondent, and upon paying the amount due upon them, he will be entitled to have them assigned to him.